Filed 9/18/24  In re R.G. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re R.G., et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>     v.<br><br>D.H.,<br><br>    Defendant and Appellant. | G063893<br><br> (Super. Ct. Nos. 21DP0214; 21DP0215)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Julie A. Swain, Judge. Conditionally reversed and remanded with directions.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torez and Chloe R. Maksoudian, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*　　　\*　　　\*

D.H. (Mother) appeals from juvenile court orders terminating her parental rights to her two children, R.G. and C.G. (collectively, Minors), following a hearing held under Welfare and Institutions Code section 366.26.[1] She contends the Orange County Social Services Agency (SSA) and the juvenile court failed to sufficiently inquire into claims of Minors' potential Native American ancestry, as mandated by the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA) and related California law (§ 224 et seq.). SSA concedes the errors and acknowledges the challenged orders must be conditionally reversed. We thus conditionally reverse the orders and remand this matter for further proceedings to ensure compliance with ICWA.

FACTS

In February 2021, SSA filed a petition against Mother and Father, asserting Minors came within section 300, subdivisions (b)(1) and (g), based on allegations of failure to protect and no provision for support. SSA alleged Mother and Father had unresolved substance abuse problems and a history of domestic violence.

The petition was prompted by a report that Mother had left home with Minors while possibly under the influence of methamphetamine and carrying a gun accessible to them. When law enforcement arrived, Mother was pushing R.G., then age 2, and C.G., then age 1, in a stroller. Mother was

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

uncooperative and, after spitting on the officer, was arrested. A search of Mother's belongings uncovered marijuana and an air pistol. Father left his sober living facility to try to take custody of Minors, but law enforcement refused to release them to him, citing his parolee status and gang affiliation. Instead, the police took Minors into protective custody and alerted SSA.

At the initial detention hearing in March, Mother and Father denied any American Indian heritage, and the juvenile court found ICWA did not apply. The court further found a prima facie showing had been established under section 300, subdivisions (b)(1) and (g), and vested temporary placement and custody of Minors with SSA.

Two months later, the jurisdiction and dispositional hearing was held without the parents, who had waived their appearances. The juvenile court accepted the parents' no contest plea, sustained an amended petition under section 300, subdivision (b)(1), found true the amended allegations in the petition, and continued the dispositional hearing to the next month.

The parents were not present at the continued dispositional hearing. At the hearing, the juvenile court found a substantial danger to Minors if they were returned to their parents, under section 361, subdivision (c), and no reasonable means by which Minors could be protected without removing them from their parents' care. The court ordered family reunification services, with Mother's case plan calling for domestic violence treatment, a parenting class, individual counseling and substance abuse testing, with a positive test result requiring Mother's participation in a substance abuse program.

Over the course of the next two years and six months, Mother's participation in services and visitation with Minors were inconsistent. Mother completed portions of her case plan, but she tested positive for

3

marijuana and was required to enroll in a substance abuse treatment program. In August 2022, there was a domestic violence incident between Mother and Father, resulting in the issuance of a temporary restraining order to protect Mother and the arrest of Father for violating parole. Three months later, Father was arrested for going to Mother's home, in violation of an active restraining order. In April 2023, Mother tested positive for marijuana and cocaine and another time for alcohol and marijuana, and in May she tested positive for marijuana and methamphetamine.

During this same period, SSA was conducting its ICWA investigation. In July 2023, the paternal grandmother reported to SSA a potential affiliation with the Oglala Sioux Tribe through her father, the paternal great-grandfather. The paternal grandmother was not enrolled in any tribe but stated her sister, the paternal grandaunt, grew up on the Standing Rock Reservation. The paternal grandmother did not know if any of these relatives were registered with any tribes because she did not grow up with her father, but she provided some biographical information for her family members. The paternal grandfather reported Navajo and Yaqui ancestry on his side of the family through the paternal great-great-grandparents, and he provided their biographical information to the social worker. From this and from several follow up interviews with the paternal grandparents, the social worker concluded there was reason to believe Minors were Indian children on the paternal side of the family and further inquiry was necessary.

In August 2023, the social worker e-mailed ICWA inquiries to the Colorado River Indian Tribes, the Pascua Yaqui Tribes, the Navajo Nation and the Oglala Sioux Tribe. By January 8, 2024, all tribes had responded. The Colorado Indian, Pascua Yaqui, and Oglala Sioux Tribes responded that

4

Minors were not eligible for membership. The Navajo Nation responded that the tribe was unable to verify Minors' eligibility.

Despite these efforts, SSA's reports do not reflect that it questioned other known relatives about their potential Native American ancestry, including the maternal grandparents, grandaunt, and aunts and uncles, and the paternal aunt and uncle, who were mentioned or identified in SSA's reports.

At the section 366.26 termination hearing, held over several days between January 3 and 25, 2024, the juvenile court heard testimony from Mother, a social worker, and a bonding study expert, and considered a variety of exhibits. After evidence and argument by the parties, the juvenile court ordered parental rights terminated and Minors placed for adoption. The court found the beneficial relationship exception, raised by Mother, did not apply. The court, however, did not address ICWA at the hearing. Mother timely appealed the termination orders. Father did not file an appeal.

DISCUSSION

The sole issue raised by Mother on appeal is whether SSA and the juvenile court complied with their respective obligations under ICWA. She contends conditional reversal is required because SSA did not ask all identified extended family members about their Native American ancestry and the juvenile court did not make an ICWA determination before terminating parental rights. Though not joining in Mother's legal analysis, SSA concedes the ICWA errors and acknowledges conditional reversal of the parental rights termination orders is required to allow for ICWA compliance. We agree SSA must make a further inquiry and the court erred by terminating parental rights without making a further finding concerning ICWA's applicability.

"'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy "'that, where possible, an Indian child should remain in the Indian community . . . ."'"" (*In re A.R.* (2022) 77 Cal.App.5th 197, 203.) To that end, "ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see *In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).)

In California, section 224.2 "codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs]." (*Isaiah W.*, *supra,* 1 Cal.5th at p. 9.) The statute "creates three distinct duties regarding ICWA in dependency proceedings. First, from [SSA]'s initial contact with a minor and [their] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then [SSA] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

"[O]nce a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*In*

*re Dezi C.* (2024) 16 Cal.5th 1112, 1132 (*Dezi C.*).) Absent contrary law or custom of the Indian child's tribe, the term "extended family member" includes "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)

"'"'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.'" [Citation.] "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know . . . the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."'" (*J.C., supra*, 77 Cal.App.5th at p. 78.) The court must make a determination concerning ICWA's applicability before termination of parental rights even if it previously found ICWA inapplicable. (*Dezi C., supra*, 16 Cal.5th at p. 1141.)

Here, the record on appeal reflects SSA was aware of several extended family members—including the maternal grandparents, and aunts and uncles, and the paternal aunt and uncle—but the record does not reflect SSA made any ICWA inquiries to them. Furthermore, the juvenile court did not make any oral or written ICWA findings at the termination of the parental rights hearing. On this record, we must conclude the court erred, and the challenged orders must be conditionally reversed to allow for ICWA compliance. (*Dezi C., supra*, 16 Cal.5th at p. 1152.)

DISPOSITION

The termination orders are conditionally reversed. The matter is remanded to the juvenile court with the following directions. Within 30 days

7

of issuance of the remittitur, SSA must file a report demonstrating compliance with its duty of further inquiry under ICWA and sections 224.2 and 224.3. Within 45 days of issuance of the remittitur, the court must conduct a hearing to determine whether SSA's investigation satisfied its duties under ICWA. The court may also consider any other ICWA-related issues that may have arisen during this appeal. The court has the discretion to adjust these time periods on a showing of good cause.

On remand, if the juvenile court finds a proper and adequate further inquiry and due diligence have been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), it shall reinstate the termination orders. If the court concludes ICWA applies, it shall proceed with ICWA and California implementing provisions. (See 25 U.S.C. § 1912, subd. (a); §§ 224.2, subd. (i)(1); 224.3, 224.4.) To expedite matters, we invite the parties to stipulate to the immediate issuance of the remittitur. (Cal. Rules of Court, rule 8.272(c)(1).)


DELANEY, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


GOODING, J.